IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2011

## STATE OF TENNESSEE v. SAUL ESTEBAN VASQUEZ

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2793    J. Randall Wyatt, Jr., Judge**

---

**No. M2010-01031-CCA-R3-CD - filed June 16, 2011**

---

A Davidson County grand jury indicted the Defendant, Saul Esteban Vasquez, for possession with intent to deliver not less than 70 pounds nor more than 100 pounds of marijuana, a Class B felony, possession of a firearm during the commission of a dangerous felony, a Class D felony, and unlawful possession of drug paraphernalia, a Class A misdemeanor. The Defendant pled guilty to the Class B felony, with the length and manner of service for the sentence left to the discretion of the trial court. The remaining counts were dismissed. The trial court sentenced the Defendant as a Range I, standard offender to eight years in the Tennessee Department of Correction. In this appeal as of right, the Defendant contends that the trial court erred in denying all forms of alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Saul Esteban Vasquez.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Andrea Green, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

A suppression hearing was held on December 17, 2009, at which the facts underlying the Defendant's offense were revealed. On June 9, 2009, Corey Sanderson of the Metro Nashville Police Department, Detective Samansky, and Agent Mike Perez of the Drug

Enforcement Agency visited the Defendant's house. The officers had received a tip from a confidential informant that approximately 300 pounds of marijuana were being stored at the Defendant's house. After the officers knocked on the door, Juan Banda-Rodriguez answered the door. The officers asked if they could enter the house, and Mr. Banda-Rodriguez allowed them to enter. Upon entering the house, Officer Sanderson smelled "an obvious odor" of burnt marijuana. When asked about the marijuana odor, Mr. Banda-Rodriguez explained that "he and his roommate smoked marijuana." Officer Sanderson asked Mr. Banda-Rodriguez for permission to "look around the house," and he consented.

While looking around the house, Officer Sanderson found the Defendant lying on a bed in a living area just inside the garage. Beside the bed, the officers found digital scales, a small bag of marijuana, and a marijuana grinder. Upon further investigation, the officers spotted a large bundle of marijuana that was laying in the open doorway of a closet. After spotting the bundle of marijuana, Officer Sanderson informed the Defendant and Mr. Banda-Rodriguez of their Miranda rights. Officer Sanderson then asked for their consent to search the entirety of the house, and Mr. Banda-Rodriguez signed a consent to search form. The Defendant never objected to the search but did not sign the form.

When Officer Sanderson asked the men if there were any firearms in the house, Mr. Banda-Rodriguez led him to the same closet where the first bundle of marijuana was found. Officer Sanderson found a .32 caliber handgun in the pocket of a jacket that was in the closet. While looking in the closet, Officer Sanderson discovered an additional 45 bundles of marijuana, bringing the total weight of the marijuana bundles to 269 pounds. Mr. Banda-Rodriguez then took Officer Sanderson to another closet and told him where to look for another weapon. At Mr. Banda-Rodriguez's direction, Officer Sanderson found a High Point 9mm handgun in the second closet. Also inside the room, Officer Sanderson found three more bags of marijuana, food savers bags, and a vacuum sealer.

The Defendant testified at the suppression hearing that he owned the house and had been paying mortgage payments. The Defendant stated that Mr. Banda-Rodriguez was merely a "temporary guest" in the house and that he allowed him to stay because Mr. Banda-Rodriguez could not apply for an apartment. The Defendant explained that Mr. Banda-Rodriguez was not a legal resident. The Defendant stated that he was never asked for consent to search his house and that he never gave permission to search his house. He admitted that he and Mr. Banda-Rodriguez were both living in the bedroom by the garage because he was remodeling the upstairs bedroom. He admitted that Mr. Banda-Rodriguez had clothing stored in that part of the house, had a key to house, and was allowed to "come and go as he wished."

At the sentencing hearing held on April 8, 2010, the State asked the court to incorporate the testimony from the Defendant's suppression hearing. The Defendant admitted at the sentencing hearing that he had been storing approximately 270 pounds of marijuana inside his house. The Defendant explained that he had entered into the drug business after he "got behind on [his] bills." The Defendant stated that he no longer needed to sell drugs because he had fewer bills. He also stated that if he were granted an alternative sentence, his uncle would provide him with a job in the Nashville area. When asked what would happen if he faced the same money problems as before, the Defendant explained that he had been working for himself before but that securing employment with his uncle would ensure that he maintained a steady income.

In the presentence report, the Defendant admitted that approximately 200 pounds of marijuana and two firearms were found in his house. The Defendant accepted responsibility for his actions and explained that he "made a decision to handle marijuana to catch up on [his] debts." When asked about his health, the Defendant reported that he began using marijuana when he was 18 years old to relieve stress and that he currently smoked two "joints" a day.

Following the presentation of the above evidence and arguments by the State and defense counsel, the court stated that a sentence of "split confinement" would have been an appropriate sentence if the offense had involved just a small amount of marijuana. However, the trial court found that the Defendant was on probation for a driving under the influence (DUI) charge when he committed the instant offense and that the present case "involve[d] 269 pounds of marijuana, two handguns, digital scales, a marijuana grinder, and a smaller bag of marijuana." The trial court also found that the Defendant had been convicted of a marijuana offense in Texas, for which he had received a 15-month sentence, suspended to probation. In so finding, the trial court denied all forms of alternative sentencing and ordered the Defendant to serve eight years in the Tennessee Department of Correction.

## ANALYSIS

The Defendant contends that the trial court erred in denying all forms of alternative sentencing given his lack of a criminal history and the nature of the offense. The Defendant asserts that the trial court should have "opted for split confinement," thereby providing him with the "opportunity to participate in the Lifelines Drug Rehabilitation Program offered at the CCA Davidson County facility, a program that has proven successful for many inmates in the past." The State responds that the trial court properly denied all forms of alternative sentencing after it considered the facts and circumstances of the offense. The State asserted that the fact that the Defendant was on probation at the time he committed the offense would have been enough to justify the trial court's denial of alternative sentencing. The State further

responds that the Defendant was not a favorable candidate for alternative sentencing because he pled guilty to a Class B felony.

The record on appeal does not include the guilty plea submission hearing transcript. The absence of the guilty plea hearing transcript is particularly important because

> [f]or those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

State v. Keen, 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) (internal citations omitted). However, we do not believe that the absence of the transcript is fatal to the appeal in this case because the testimony submitted at the suppression hearing presented sufficient facts surrounding the offense to which the Defendant pled guilty. The State agrees that the absence of the guilty plea transcript is not fatal in this case.

The Defendant committed this offense on June 9, 2009; therefore, he was sentenced under the 2005 revisions to the Criminal Sentencing Act. The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a). However, the Defendant must have established his suitability for probation. Tenn. Code Ann. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The Defendant was not presumed to be a favorable candidate for alternative sentencing under the revisions to the Sentencing Act. Tenn. Code Ann. § 40-35-102(6). Because he was convicted of a Class B felony, he would not even have been "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C); see also Hooper, 29 S.W.3d at 5. The trial court shall also consider the mitigating and enhancing factors as set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In this case, the Defendant was not considered to be a favorable candidate for alternative sentencing because he was convicted of a Class B felony. The Defendant did not have a significant criminal history; however, the Defendant had received a probationary sentence for a possession of marijuana conviction in another state. Additionally, the Defendant was on probation for a DUI conviction when he committed the offense in this case. The amount of marijuana involved in this case, approximately 269 pounds, was extremely significant. While the Defendant argues that the trial court should have sent him to a drug rehabilitation program, other than a cursory reference to his marijuana habits in the presentence report, the Defendant presented no evidence at the sentencing hearing to establish that he was in need of rehabilitation or that he committed the offense because he had an addiction problem. In fact, the Defendant explained that his sole purpose for engaging in the sale of marijuana was for monetary reasons. The record reflects that the trial court properly considered all of the statutorily mandated factors in making its decision. Following our review, we conclude that the record supports the trial court's sentencing decision. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE